# EXHIBIT A

**U.S. Department of Labor**   Office of Administrative Law Judges
90 Seventh Street, Suite 4-800
San Francisco, CA 94103-1516

(415) 625-2200
(415) 625-2201 (FAX)



Issue Date: 17 November 2017

CASE NO.:   2016-LDA-00213

OWCP NO.:   08-301576

*In the Matter of:*

**CECILIA R. COON,**
        Claimant,

    v.

**OMNI AIR INTERNATIONAL, INC./
STARR INDEMNITY & LIABILITY CO.,**
        Employer/Carrier, and

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS,**
        Party-in-Interest

### ORDER SUMMARILY ADJUDICATING ISSUE OF DEFENSE BASE ACT COVERAGE

This Defense Base Act[1] case is before me on cross-motions for summary decision. Claimant was working for Employer as a flight attendant and was at times assigned to international flights for the Department of Defense. She sustained injuries – not on a flight – but in a motor vehicle accident while returning from Employer-mandated drug- and alcohol-testing. The testing (including travel to) and the accident occurred within the continental United States, near Arlington, Texas.

The motions raise the single issue of whether Claimant's alleged injuries come within the Act's coverage. I will find that they do, and I will summarily adjudicate the issue favorably to Claimant and against Employer/Carrier.

---

[1] The Defense Base Act, 42 U.S.C. §§ 1651, is an extension of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq*. The implementing regulations are at 20 C.F.R. Part 702.

## Undisputed Facts[2]

Employer Omni Air employs pilots, flight attendants, maintenance crew, ground services, dispatchers, flight instructors, and administrative staff. J.Ex. 8 at 5.[3] Claimant began her work for Employer in 2012 as a flight attendant. C.Ex. 1 at 5; J.Ex. 1.

In February 2014, Claimant was still working for Employer as a flight attendant; she was based at Dallas-Fort Worth International Airport. C.Ex. 1 at 6; J.Ex. 15. Employer assigned her to flights for the U.S. Department of Defense and for four air carriers: Aer Lingus, AMC (Egyptian), Boliviana, and Scandinavian (SAS). J.Ex. 15.

In the fourteen months from December 29, 2012, to the date of Claimant's injury on February 10, 2014, Claimant worked 83 flights. J.Ex. 13, 14, 15. The parties stipulate that Claimant's work on some of the DOD flights came within the scope of the Defense Base Act. Stipulations ¶18. In particular, of the 83 flights, Claimant worked on 44 DOD-contracted international flights during this time; that is the work that the parties agree came within the Defense Base Act. J.Ex. 13, 14, 15. Claimant's last three flights preceding her injury accident on February 10, 2014, were DOD-contracted international flights. J.Ex. 15 at 8.

The Department of Defense contract required Employer to hold current valid Federal Aviation Administration or Department of Transportation certification to engage in direct air transportation services. J.Ex. 9 at 101. The DOD contract also required Omni Air to comply with DOD safety requirements (as described in 32 C.F.R. § 861.4) as well as "all provisions of applicable statutes, tenders of service, and contract terms as such may affect flight safety, as well as with all applicable Federal Aviation Administration (FAA) regulations, Airworthiness Directives, Orders, rules, and standards promulgated under the Federal Aviation Act of 1958, as amended." *Id.* at 72.

For a company to retain FAA certification to operate, the FAA's regulations require the company to conduct a specified minimum number of random drug and alcohol tests on all employees who perform safety-sensitive functions. 14 C.F.R. Part 120; J. Ex. 8 at 5-7; J.Ex. 9 at 106-108, 163-175. Flight attendants are among the employees who perform safety-sensitive functions. *Id.* Thus, for Employer to maintain its FAA certification (as the DOD contract requires) and to comply with FAA requirements (as the DOD contract also requires), Employer must randomly test its flight attendants. *Id.*

On February 10, 2014, Employer assigned Claimant to a "reserve day." Stipulations ¶ 18; J.Ex. 8 at 7. Claimant had to be within two hours of her base (DFW), available for work if called. *Id.*

---

[2] Unless otherwise specified, I rely for these findings on the stipulations the parties filed jointly on January 26, 2017. The facts recited are for purposes of this motion only.

[3] "J.Ex." refers to the parties' joint exhibits. "C.Ex." refers to Claimant's exhibits. Without objection, I admit all offered exhibits. Employer/Carrier offered no exhibits apart from the joint exhibits.

"Stipulations" refers to the stipulated facts Claimant and Employer/Carrier submitted on January 26, 2017. I accept the stipulations for purposes of these cross-motions.

Employer's drug-testing agent contacted Claimant and directed her to come to a particular location in Arlington, Texas for a drug and alcohol test. Stipulations ¶ 18; J.Ex. 1 at 4; J.Ex. 8 at 7; C.Ex. 1 at 13-15. Another flight attendant, Tristan Vann, was with Claimant. C.Ex. 1 at 14. She drove Claimant to the testing facility in Arlington. Stipulations ¶ 18; J.Ex. 1; C.Ex. 1 at 14. After Claimant completed the test, Vann was driving them back to Claimant's residence, the road was icy, and the car skidded and struck a guard rail. *Id.* Claimant sustained injuries to her neck, back, and rib, as well as a closed head injury. J.Ex. 3.

### Discussion

*Analytical framework for summary decision.* On summary decision, I must determine if, based on the pleadings, affidavits, material obtained by discovery or otherwise, or matters officially noticed, there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. *See* 29 C.F.R. §18.72 (2015); Fed. R. Civ. P. 56. I consider the facts in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (applying same rule in cases under Fed. R. Civ. P. 50 and 56).

Once the moving party shows the absence of a genuine issue of material fact, the non-moving party cannot rest on his pleadings, but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); 29 C.F.R. §18.40(c). A genuine issue exists when, based on the evidence, a reasonable fact-finder could rule for the non-moving party. *See Anderson*, 477 U.S. at 252.

*Claimant's alleged injuries come within the scope of the Act.* Congress limited application of the Defense Base Act to injuries (or deaths) occurring within one of six enumerated conditions. 42 U.S.C. § 1651(a)(1)-(6). Once a claimant establishes one of the conditions, the Act applies "irrespective of the place where the injury or death occurs." *Id.* Here, the parties agree that that Claimant's work as a flight attendant on international flights for the Department of Defense comes within one of the six enumerated conditions. This stipulation is consistent with applicable law, and I accept it.[4]

The parties' dispute is narrower. Employer/Carrier contends that Claimant's compliance with the directive that she submit to random drug- and alcohol-testing was not in connection with any particular Omni Air customer or client; it had no particular connection with international flights for the Defense Department and thus was not Defense Base Act-covered work. Claimant

---

[4] In particular, the Defense Base Act extends to injuries that an employee sustains in any employment "under a contract entered into with the United States or any executive department . . . thereof . . ., where such contract is to be performed outside the continental United States . . . for the purpose of engaging in public work . . . ." 42 U.S.C. § 1651(a). "Public work" means "government-related construction projects, work connected with the national defense, or employment under a service contract supporting either activity." *University of Rochester v. Hartman*, 618 F.2d 170, 176 (2nd Cir. 1980), citing 42 U.S.C. § 1651(b)(1); *accord Casey v. Chapman College*, 23 BRBS 7 (1989). I accept the parties' implicit agreement that work performed under a government contract to transport outside the continental United States personnel or equipment of the Department of Defense is work under a service contract in support of the national defense and therefore "public work" within 42 U.S.C. § 1651(a)(4).

contends that the drug- and alcohol-testing was in furtherance of or in preparation for the covered DOD international flights and thus comes within the Act. Claimant has the better argument.

The Defense Base Act extends to work that a government contractor requires an employee to perform in preparation for work that the Act covers. *See Phoenix Indem. Co. v. Willard*, 130 F. Supp. 657 (S.D. N.Y. 1955).[5] In *Willard*, the employer hired the claimant to perform covered construction work abroad. Before the claimant was permitted to begin any specific work assignments, the employer required him to be "'processed' for departure," including being photographed, getting a passport and other identification credentials, and getting inoculations. The claimant's employment contract expressly required him to complete these steps in preparation for overseas work. As part of the preparation, the claimant was required to go to the War Department in New York to get an identification card. Afterward, he ate dinner and took a bus to Hoboken, New Jersey, where he was staying during completion of the preparation process. As he exited the bus, he slipped and fell "due to sleet and rain."

The court held that the Defense Base Act covered the claimant's injuries. The court stated that the incident "was sufficiently related to [the claimant's] employment and so incidental to the necessary preparation for his overseas assignment as to make the injury sustained . . . one arising out of and in the course of his employment." 130 F. Supp. at 659.[6]

For its argument that the drug- and alcohol-testing was not in preparation for the international DOD flights, Employer/Carrier misplaces its reliance on *Rosenthal v. Statistica, Inc.*, 31 BRBS 215 (1998). There, the worker was fatally injured in an automobile accident in Spain. He had been performing work in two separate capacities: (1) he worked on a Department of State contract providing information technology concerning passports, visas, and computer security; and (2) he negotiated with other potential Statistica customers (other nations, states, universities, and private corporations) for the sale and installation of similar technology. The State Department paid Statistica for Rosenthal's activities related to the government contract but not for his other activities; Rosenthal had to keep billing records that segregated his time worked on the State Department contract.

Rosenthal's time sheets showed that he last worked on the State Department contract on February 26, 1992. He then performed non-government work for the next two days, took three days of personal time, and was on his second day back doing non-government work when the fatal accident occurred on March 4, 1992.

The Board affirmed the ALJ's decision denying benefits. It did not reach the assumption that the decedent's work for the State Department was covered. Rather, it affirmed the ALJ's finding

---

[5] As Judge Gee held and the BRB did not disturb, an employee can show work under a government contract if she was "involved in the performance of a government contract," "acted in furtherance of a government contract," or was doing work "which was related to the employer's contract with the United States." *Z.S. v. Science Applications Int'l Corp.*, 42 BRBS 87 (2008) (citations omitted).

[6] The court also held that "waiting in preparation for a trip overseas" is "clearly bound up with" the overseas travel as would be a "stopover en route." *Id.* The Act covers injuries incurred during transportation to or from the place of employment; therefore it covers the injuries alleged. *Id.*

that, at the time of the fatal accident, the decedent was not performing work related to the State Department contract but was engaged in his employer's private business.[7]

Viewing the evidence in the present case in the light most favorable to Employer/Carrier, I find nothing to support a finding that Claimant's work on the DOD international flights was at an end or that the drug- and alcohol-testing on February 10, 2014, was not in preparation for or in furtherance of her continued work on DOD international flights. More than half of Claimant's flights throughout her employment had been DOD international flights. Employer/Carrier does not contend that it had decided to relieve Claimant of her duties on future DOD international flights, and nothing on the record suggests that it had.

Unlike in *Rosenthal*, Claimant's last three flights before the injury had been DOD international flights and she was in the location where she would be assigned to more DOD international flights (not hundreds of miles away in another country). She was not engaged in a separate task for her employer; she was awaiting her next flight assignment, which (given her 14-month work history) more likely than not would have been on a DOD international flight.

In all, the record offers nothing to bring into question that Employer's requirement that Claimant submit to drug- and alcohol-testing on February 10, 2014, was a step Employer took to allow Claimant to continue her work on Defense Base Act-covered DOD international flights. The testing was also required for other purposes, such as her work on the flights for the four carriers and on the DOD domestic flights. But that fails to sever the connection with the DOD international flights.

I therefore find that, at the time of the alleged injuries, Claimant was engaged in employer-mandated travel, one of the purposes of which was in preparation for or in furtherance of her continued covered work as a flight attendant on covered international flights for the Department of Defense. As a matter of law, the Defense Base Act applies to this claim.

*Claimant is entitled to summary adjudication of the coverage issue, but she is not entitled to summary decision.* Claimant moved for summary decision. A favorable determination on summary decision adjudicates all issues and concludes with a denial of the claim or an award of specific relief. *See* 29 C.F.R. § 18.72(a); *see also* 33 U.S.C. § 919.

When there is a genuine dispute as to a material fact, summary decision is improper. *See* 29 C.F.R. § 18.72(a). Here, Claimant has failed to establish what her average weekly wage was at the time of the injury; the parties agree that this is a fact in dispute. A compensation rate cannot be set without a determination of average weekly wage. Thus, the record contains a genuine dispute as to a material fact, and summary decision must be denied.

Nonetheless, an administrative law judge "may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." *See* 29 C.F.R.

---

[7] The Board also rejected the argument that the decedent was in transit on the State Department work. To the contrary, the State Department was not paying for the decedent's return from Spain (where he was doing his employer's private work) to Brussels, where he last did State Department work. State was to pay only for the decedent's return travel from Brussels.

§ 18.72(g). This permits summary adjudication of an issue when a motion for summary decision is denied.

Based on the cross-motions, I have concluded as a matter of law that the Defense Base Act's coverage extends to Claimant's injuries allegedly sustained in the motor vehicle accident on February 10, 2014, while she was returning from employer-mandated drug- and alcohol-testing. Summary adjudication of this issue therefore is proper. 29 C.F.R. § 18.72(g).

Order

Employer/Carrier's motion for summary decision is DENIED.

Claimant's motion for summary decision is DENIED. However, summary adjudication is GRANTED as follows: The Defense Base Act's coverage extends to Claimant's claim for injuries allegedly sustained in the motor vehicle accident on February 10, 2014, while Claimant was returning from Employer's mandated drug- and alcohol-testing. This is conclusively established for all purposes in this litigation.

This Order will be served on counsel for Claimant and counsel for Employer/Carrier by facsimile or email. All other service is by U.S. mail.

The administrative law judge will notify counsel of a date and time for a telephonic status conference to determine whether the parties wish to resolve the remaining issues amicably or whether the matter should be restored to the trial calendar for a determination of the remaining disputed issues.

SO ORDERED.



Digitally signed by STEVEN BERLIN
DN: CN=STEVEN BERLIN, OU=ADMIN LAW JUDGE, O=US DOL Office of Administrative Law Judges, L=San Francisco, S=CA, C=US
Location: San Francisco CA

STEVEN B. BERLIN
Administrative Law Judge