United States District Court
Southern District of Texas
**ENTERED**
March 22, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **OMNI AIR INTERNATIONAL**, *et al.*, | § | |
| | § | |
| **Petitioners**, | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:19-CV-01559** |
| | § | |
| **DIRECTOR, OFFICE OF WORKERS'** | § | |
| **COMPENSATION PROGRAMS**, *et al.*, | § | |
| | § | |
| **Respondents.** | § | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court is petitioner's Brief in Support of Petition for Review (Doc. 16). At a hearing on March 3, 2021, the Court took the Brief under advisement. For reasons enumerated below, the Court now **REVERSES** the decision and order of the Benefits Review Board and the Administrative Law Judge, **HOLDS** that Ms. Coon's injuries are not covered by the Defense Base Act, and **REMANDS** this cause with instructions to enter an order consistent with the findings of this Court.

## I.    FACTUAL BACKGROUND

On February 10, 2014, Cecilia Coon ("Coon") was injured in the crash of a privately owned vehicle on a public road near Arlington, Texas. (Doc. 16 at 3). Ms. Coon worked as a flight attendant for Omni Air International Inc. ("Omni"), a charter airline specializing in passenger charter flights. (*Id.*) As an Omni employee, Ms. Coon served on private charter flights for several clients as well as Department of Defense ("DOD") charter flights, both domestic and international.

(*Id.*) She worked out of Omni's base in Dallas, Texas, which served various customers, but had its biggest contract with the DOD. (Doc. 18 at 6). From her hire date in 2012 to the date of injury, Ms. Coon was assigned to 83 flights, 44 of which were international flights in furtherance of Omni's contract with the DOD. (Doc. 12-1 p.27; 12-4 p.156-163). Ms. Coon's last three flights immediately preceding her accident on February 10, 2014, were DOD flights to or from international destinations. (Doc. 12-4 p.163).

On February 10, 2014, Ms. Coon was assigned to a "reserve day," meaning that she was required to be within two hours of her base and available for work if called. (Doc. 12 p. 8; 12-1 p.27; Doc. 12-5 p.19). At the time, however, she was not scheduled for any upcoming DOD chartered flights or any flights at all. (Doc. 16 at 3). Omni directed Ms. Coon to present herself at an employer-designated facility in Arlington, Texas, for random drug and alcohol testing, which the Federal Aviation Administration ("FAA") requires for all flight attendants and other "safety sensitive" employees (doc. 12 p.8; 12-1 p.28; 12-5 p.6); the FAA's testing requirements were also expressly incorporated into the DOD's contract with Omni.[1] (Doc. 18 at 7).

On the designated day, a fellow flight attendant drove Ms. Coon to the drug testing facility. (Doc. 12 p.8; 12-1 p.28; 12-5 p.5). Driving home after the testing, the flight attendants encountered ice on the roadway, and their vehicle skidded and struck a guard rail. (Doc. 12 p.8). As a result,

---

[1] The contract provides: "This contract is conditioned upon [Omni] . . . being an air carrier and holding a Certificate of Public Convenience and necessity issued under Section 401 of the Federal Aviation Act (FAA of 1958, as amended), or otherwise authorized by the Department of Transportation (DOT) to engage in direct air transportation services, holding an Air Carrier's Operating Certificate issued by the FAA under part 121 of the Federal Aviation Regulations (14 CFR 121) for airlift operated by the offeror, and participating in the [Civil Reserve Air Fleet], if applicable." It further provides that Omni "shall comply with all provisions of applicable statutes, tenders of service, and contract terms as such may affect flight safety, as well as with all applicable FAA Regulations, Airworthiness Directives, Orders, rules and standards promulgated under the Federal Aviation Act of 1958, as amended." (Doc. 12 at 8).

Ms. Coon suffered the injuries that are the basis of this claim (neck, back, rib, and closed head injuries). (Doc. 12 at 8-9). Ms. Coon filed a claim for her February 10, 2014 injuries under the Texas Workers' Compensation Act and was awarded benefits thereunder on November 29, 2017. (Doc. 12-1 at 44). Ms. Coon also filed her present claim under the Defense Base Act ("DBA" or "the Act").

Administrative Law Judge ("ALJ") Berlin held that Ms. Coon's injury and subsequent claim were within the jurisdiction of the DBA. (Doc. 12-1, pp. 76-82). In doing so, ALJ Berlin relied on the idea that, even though Ms. Coon was not scheduled for any upcoming DOD flights, "her next flight assignment . . . (given her 14-month work history) more likely than not would have been on a DOD international flight." (Doc. 12-1 at 80). The judge continued,

> In all, the record offers nothing to bring into question that [Omni's] requirement that [Ms. Coon] submit to drug-and-alcohol-testing on February 10, 2014 was a step [Omni] took to allow [Ms. Coon] to continue her work on Defense Base Act-covered DOD international flights. The testing was also required for other purposes, such as her work on the flights for the four carriers and on the DOD domestic flights. But that fails to sever the connection with the DOD international flights.

> I therefore find that, at the time of the alleged injuries, [Ms. Coon] was engaged in employer-mandated travel, one of the purposes of which was in preparation for or in furtherance of her continued covered work as a flight attendant on covered work as a flight attendant on covered international flights for the Department of Defense. As a matter of law, the Defense Base Act applies to this claim.

(*Id.*) When petitioner Omni appealed, the Benefits Review Board ("BRB") issued a 2-1 decision affirming Judge Berlin's decision. (Doc. 12, at 7-18).

## II.     DISCUSSION
### A.  Standard of Review

This Court must review the decision of the BRB and affirm "'if [the BRB] correctly concluded that the ALJ's findings are supported by substantial evidence and are in accordance

with the law.'" *Mendoza v. Marine Personnel Co., Inc*., 46 F.3d 498, 500 (5th Cir. 1995) (quoting *P & M Crane Co. v. Hayes*, 930 F.2d 424, 428 (5th Cir. 1991)). The Court's review of the Board's factual determinations is limited to determining whether those findings are supported by substantial evidence on the record as a whole. *ITO Corp. v. Director, OWCP*, 883 F.2d 422, 424 (5th Cir. 1989). With respect to issues of law, the Court's review is de novo. *New Orleans Stevedores v. Ibos*, 317 F.3d 480, 483 (5th Cir. 2003), *cert. denied*, 540 U.S. 1141 (2004).

### B.  The Defense Base Act

The Defense Base Act—created to provide workers' compensation protections for workers outside the jurisdiction of other state or federal workers' compensation systems—applies with respect to the injury or death of any employee engaged in any employment enumerated in 42 U.S.C. § 1651(a)(1-6). Respondent relies on DBA coverage through §1651(a)(4) which applies "in respect to the injury or death of any employee engaged in any employment . . . under a contract entered into with the United States . . . or any agency thereof . . . where such contract is to be performed outside the continental United States . . . for the purpose of engaging in public work." 42 U.S.C. § 1651(a)(4). The DBA defines "public work" to include "projects or operations under service contracts and projects in connection with the national defense or with war activities, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project." 42 U.S.C. § 1651(b)(1).

The Act further provides DBA coverage in connection with each of the enumerated categories of employment in §1651(a)(1)-(6), "irrespective of the place where the injury or death occurs, and shall include any injury or death occurring to any such employee during transportation to or from his place of employment, where the employer or the United States provides the

4

transportation or the cost thereof." 42 U.S.C. § 1651(a). The DBA extends to work that a government contractor requires an employee to perform in preparation for work that the Act covers. 42 U.S.C. § 1651(b)(1); *see Phoenix Indem. Co. v. Willard*, 130 F.Supp. 657 (S.D.N.Y. 1955). Thus, the circumstances of claimant's activities at the time of injury must be examined to determine if she was "engaged in any employment" under the public work contract. 42 U.S.C. §1651(a)(4); *see Airey v. Birdair*, 12 BRBS 87 (2008).

### C.  Analysis

Omni concedes that the work performed in furtherance of its contract with the DOD to transport personnel and equipment outside the United States is a "public work" within the meaning of 42 U.S.C. §1651(a). (Doc. 16 at 9). It further concedes that Ms. Coon's injury occurred in the course and scope of her employment. (Doc. 19 at 3). Omni contends only that Ms. Coon's injury does not fall within DBA coverage because she was not injured while actually performing the public work contract while on a DOD charter. (Doc. 19 at 4).

The arguments thus center upon (1) whether it is enough for "public work" purposes that at the time Ms. Coon was injured, she was likely going to be assigned to an overseas DOD flight; and (2) whether Omni's contract with the DOD, which explicitly incorporated the FAA, caused Ms. Coon's actions in compliance with the FAA to fall under the coverage of the DBA.

### 1.  Whether Ms. Coon's Likely Assignment to a DOD International Flight Qualified Her for DBA Coverage

ALJ Berlin and the Benefits Review Board (BRB) relied in large part on the facts of *Phoenix Indemnity Company v. Willard*, 130 F.Supp. 657 (S.D.N.Y 1955) for the proposition that Ms. Coon's likely future assignment to a DOD international flight at the time of her injury qualified

her for DBA coverage. However, *Willard* is distinguishable because, at the time he was injured, the *Willard* claimant (Mr. Perretti) was under contract for a specific DBA work assignment.

Prior to being sent overseas, Mr. Peretti entered into a written contract of employment to be the Chief Inspector-Driller for a DBA-covered construction project in Libya. *Willard*, 130 F.Supp. at 658. Pursuant to the overseas DBA contract, Mr. Peretti had to complete processing in the United States that included being photographed, getting a passport, and getting inoculations. *Id*. at 658-59. Mr. Peretti, who permanently lived in Connecticut, was staying temporarily at the YMCA in Hoboken, New Jersey, when he traveled to New York City to obtain an identification card from the War Department. *Id*. After obtaining his identification card, Mr. Peretti stopped for dinner on the way back to Hoboken when he slipped and fell on ice and sustained injuries held to be in the course of employment. *Id*. at 659.

The BRB and ALJ Berlin erred in concluding that Mr. Perretti, like Ms. Coon, "had no specific [DBA] work assignment at the time of his injury."(Doc. 12 at 11). While Ms. Coon truly had no future scheduled work assignments at the time of her injury, Mr. Peretti in *Willard* was injured while performing processing and examination solely related to his contract for DBA-covered work as a Chief Inspector-Driller in Libya. There is no indication that Peretti's job was bifurcated between DBA and non-DBA work as Ms. Coon's is. There is no indication that the activities Mr. Peretti was performing when injured could be characterized as furthering any non-DBA employment. Therefore, *Willard* does not teach that Ms. Coon's likely future assignment to a DOD international flight, without more, made her drug testing compliance a public work within the DBA's coverage.

6

ALJ Berlin and the BRB also incorrectly cited *Rosenthal v. Statistica, Inc.,* 31 BRBS 215 (1998) in support of the proposition that Ms. Coon was undertaking a public work at the time she was injured.

In *Rosenthal*, Dr. Jules Rosenthal was a project manager who worked on his employer's DBA contract with the State Department and who also worked on separate dealings his employer had with other clients. *Rosenthal*, 31 BRBS at 216-17. Dr. Rosenthal's covered and non-covered employment was largely related to the same product: a readable visa and passport ("MRVP") system; however, it was determined that Dr. Rosenthal supervising installation of the MRVP systems was DBA covered work, and Dr. Rosenthal marketing the MRVP system was non-DBA covered work. *Id*. Dr. Rosenthal was killed in a car crash returning from Andorra on an assignment unrelated to the DBA contract, and the BRB accordingly found that his death was not covered under the Defense Base Act. *Id*. at 217-18. To determine if there was coverage under the Act, the BRB looked at Dr. Rosenthal's activities at the time of his death and found that there was substantial evidence that Dr. Rosenthal was not participating in State Department work at the time of his injury and death *Id*.

In an attempt to distinguish the present matter, ALJ Berlin began by pointing out that at the time of Dr. Rosenthal's death, his DBA-covered work had clearly ended because "Dr. Rosenthal's time sheets showed that he last worked on the State Department contract on February 26, 1992. He then performed non-governmental work for the next two days, took three days of personal time, and was on his second day back doing non-governmental work when the fatal accident occurred on March 4, 1992." (Doc. 12-1 at 79). ALJ Berlin then tried to differentiate the present matter, writing that at the time of Ms. Coon's injury, her covered work was *not* clearly at

an end because "[Ms. Coon's] last three flights before the injury had been DOD international flights," and her next flight assignment "more likely than not would have been on a DOD international flight." (Doc. 12-1 at 80). Berlin continued, writing that even though the drug testing Ms. Coon was driving back from at the time of injury " . . . was required for other purposes, such as [Ms. Coon's] work on the flights for the four carriers and on the DOD domestic flights . . . that fail[ed] to sever the connection with the DOD international flights." (*Id.*)

However, ALJ Berlin failed to explain why or how Ms. Coon's previous work and future work should bear on the fact that at the time of her injury, Ms. Coon had no work assignments whatsoever. This Court concurs with dissenting Administrative Appeals Judge Boggs who wrote regarding the present matter, "the circumstances of this case are similar to those in *Rosenthal* in that the claimant was injured in the course of her employment but was not covered by the DBA because, at the time of injury, she was not engaged in employment under employer's contract with the government." (Doc. 12 at 15) It is a matter of speculation to assert that the claimant would soon have been assigned to a DOD flight.

Therefore, this Court finds that Ms. Coon's previous work assignments and likely future work assignments did not transform her drug testing compliance into public work.

### 2. Whether Ms. Coon's Compliance with the FAA Testing Mandate Qualified Her for DBA Coverage

It is undisputed that in its contract with Omni, the DOD expressly required Omni to comply fully with all applicable FAA regulations, including safety regulations requiring mandatory drug and alcohol testing for flight attendants. (Doc. 12 at 8). It is also undisputed that regardless of the DOD contract, Omni would still have needed to comply with the FAA's requirements in order to

8

legally exist as an airline provider in the United States. (*Id.*) And it is undisputed that the DOD contract was for non-DBA domestic flights as well as DBA-covered international flights. (*See* doc. 12-1 at 30).

ALJ Berlin and the BRB found that even though Omni's requirement that Ms. Coon submit to drug and alcohol testing on February 14th was in service of her work on private and domestic flights just as much as it was in service of her work on DOD international flights, "that fail[ed] to sever the [drug testing's] connection with the DOD international flights." (Doc. 12-1 at 80; doc 12 at 11). On appeal, the BRB affirmed, characterizing the contract between Omni and the DOD as a DBA-covered "overseas public work contract." (Doc. 12 at 13). Thus, the BRB opined, "[b]y traveling to a drug test explicitly mandated by the terms of the overseas public works contract, [Ms. Coon] was . . . actually engaged in employment under the plain terms of the contract when she was injured." (*Id.*).

This Court holds that the BRB's finding that the contract between the DOD and Omni was an "overseas public works contract" is not supported by substantial evidence on the record as a whole. *See ITO Corp. v. Director, OWCP*, 883 F.2d 422, 424 (5th Cir. 1989). Because the undisputed fact is that the DOD contract was for non-DBA domestic flights as well as DBA-covered international flights, it follows that the contract was not an overseas work contract. (*See* doc. 12-1 at 30). As such, when Ms. Coon submitted to FAA testing requirements, she was not, by so submitting, inherently engaged in DBA-covered public work. To assume otherwise would expand the scope of the DBA beyond the statute's contemplation to cover FAA compliant individuals whose jobs may have virtually nothing to do with specific performance of a contract for a public work. Such a wide scope is not in accordance with the language of the DBA which

requires that the injured claimant be "engaged in any employment . . . under a contract entered into with the United States . . . for the purpose of engaging in public work." 42 U.S.C. §1651(a)(4).

Therefore, this Court agrees with dissenting Administrative Appeals Judge Boggs, who found that Ms. Coon did not, by submitting to drug testing, establish the required nexus between her testing and engagement in employment for a public work under her employer's DOD contract. (Doc. 12 at 16).

## III.    CONCLUSION

For the reasons described above and as stated on the record at the March 3, 2021 hearing, the Court **REVERSES** the decision and order of the Benefits Review Board and the Administrative Law Judge, **HOLDS** that Ms. Coon's injuries are not covered by the Defense Base Act, and **REMANDS** this cause with instructions to enter an order consistent with the findings of this Court.

**IT IS SO ORDERED.**

**SIGNED** at Houston Texas on this the 22nd day of March, 2022.

KEITH P. ELLISON

UNITED STATES DISTRICT JUDGE

10